**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Greenbelt Division)

**ALPHA PSI CHAPTER OF**
**THETA CHI FRATERNITY**
7401 Princeton Avenue
College Park, Maryland 20740

AND

**BETA KAPPA CHAPTER OF KAPPA**
**ALPHA ORDER**
1 Fraternity Row
College Park, MD 20740

AND

**EPSILON DELTA CHAPTER OF**
**ALPHA SIGMA PHI FRATERNITY**
9 Fraternity Row
College Park, MD 20740

AND

**EPSILON GAMMA CHAPTER OF**
**ALPHA TAU OMEGA FRATERNITY**
4611 College Ave
College Park, MD 20740

AND

**JOHN DOE 1**
1 Fraternity Row
College Park, MD 20740

AND

**JOHN DOE 2**
9 Fraternity Row
College Park, MD 20740

AND

**JOHN DOE 3**
7401 Princeton Avenue

Case No.: __________________________

College Park, Maryland 20740 :

**Plaintiffs,** :

v. :

**JAMES BOND** :
2108 Mitchell Building :
7999 Regents Drive :
College Park, MD 20742 :

AND :

**JAMES MCSHAY** :
2108 Mitchell Building :
7999 Regents Drive :
College Park, MD 20742 :

AND :

**PATRICIA PERILLO** :
2108 Clarence M. Mitchell, Jr. Bldg. :
7999 Regents Drive :
College Park, MD 20742 :

AND :

**DARRYLL PINES** :
1101 Thomas V. Miller, Jr. Admin. Bldg. :
7901 Regents Drive :
College Park, MD 20742 :

AND :

**UNIVERSITY OF MARYLAND, COLLEGE PARK** :
c/o Office of the Attorney General :
Civil Litigation Division :
200 Saint Paul Place :
Baltimore, MD 21202 :

**Defendants.** :

**PLAINTIFFS' VERIFIED COMPLAINT**
**FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

## Introduction

While Defendants have already admitted that "no single or specific incident led to this decision," the University of Maryland has punished every single member and new member of certain categories of fraternities and sororities. This punishment, which is now in its thirteenth day with no end in sight, has denied college students their First and Fourteenth Amendment rights in a significant manner. To have their rights restored, the University is requiring that students submit to a mandatory interrogation by attorneys retained by the University under threat of discipline for refusal to comply.

Plaintiffs bring this action to put a stop to such misconduct and to enforce and vindicate their First and Fourteenth Amendment rights. Maryland's directive, both on its face and as applied, unlawfully restricts constitutionally guaranteed rights of the citizens of this State to free expression. Through its directive(s), the University engaged in unconstitutional viewpoint discrimination to remove certain ideas or perspectives from a broader public debate.

## Jurisdiction & Venue

1. This action arises under the U.S. Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.
2. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331 and § 1343. The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367.
3. The Court has authority to grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57, and to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Fed. R. Civ. P. 65. The Court is authorized the award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

4. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1) in that the facts giving rise to Plaintiffs' claims occurred in this district, and the parties either reside or maintain a principal place of business in this district and division.

**Plaintiffs**

5. The Alpha Psi Chapter of Theta Chi Fraternity is a Maryland unincorporated association that has roughly sixty-seven (67) members, all of whom are current students at the University of Maryland. The Chapter was officially established at the University in 1929, and is a member of the University's Interfraternity Council (IFC).

6. Theta Chi Fraternity's mission is to develop college-age men into successful students, good citizens, lifelong brothers, and resolute leaders. The various traditions that have characterized Theta Chi include an emphasis on true friendship, mutual benefit and improvement, service to others, and stiving to live up to the Fraternity's ideals, as exemplified by its motto and Creed.[1]

7. The Beta Kappa Chapter of Kappa Alpha Order is a Maryland unincorporated association that has around seventy (70) members, all of whom are current students at the University of Maryland. The Chapter was officially established at the University in 1914, and is a member of the University's IFC.

8. Kappa Alpha Order brings together men who share the following values: reverence, gentility, knowledge, leadership, brotherhood, and excellence.[2]

9. The Epsilon Delta Chapter of Alpha Sigma Phi Fraternity is a Maryland unincorporated association that has approximately sixty (60) members, all of whom are current students at the

---

[1] *What We Believe In*, THETA CHI FRATERNITY, https://www.thetachi.org/ideals (last visited Mar. 13, 2024).

[2] *Purpose and Values*, KAPPA ALPHA ORDER, https://www.kappaalphaorder.org/about/values/ (last visited Mar. 13, 2024).

University of Maryland. The Chapter was officially established at the University in 1998, and is a member of the University's IFC.

10. The Alpha Sigma Phi Fraternity's purpose is to better the man through the creation and perpetuation of brotherhood founded upon the values of character.[3]

11. The Epsilon Gamma Chapter of Alpha Tau Omega Fraternity is a Maryland unincorporated association that has approximately 115 members, all of whom are current students at the University of Maryland. The Chapter was officially established at the University in 1930, and is a member of the University's IFC.

12. The Alpha Tau Omega Fraternity emphasizes preparing its members to be leaders in their communities, while also facilitating scholarship, character, service, friendship, brotherhood, and networking.[4]

13. John Doe 1 is a current student at the University of Maryland and a member of the Beta Kappa Chapter of Kappa Alpha Order.

14. John Doe 2 is a current student at the University of Maryland and a member of the Epsilon Delta Chapter of Alpha Sigma Phi Fraternity

15. John Doe 3 is a current student at the University of Maryland and a member of the Alpha Psi Chapter of the Theta Chi Fraternity.

---

[3] *Mission, Values, Purpose, & Motto*, ALPHA SIGMA PHI FRATERNITY, https://alphasig.org/about-the-fraternity-1#72da3bed-8eda-45f7-a017-d3ee4cc65ad9 (last visited Mar. 13, 2024).

[4] *The Creed of Alpha Tau Omega*, ALPHA TAU OMEGA, https://ato.org/home/ato-creed/ (last visited Mar. 13, 2024).

**Defendants**

16. Defendant James Bond is the Director of Student Conduct at the University of Maryland. He has signed and authorized both the First and Second Suspension and No Contact Order described herein. He is named in his individual and official capacity.

17. Defendant James McShay is the Assistant Vice President for Student Affairs and Interim Director of Fraternity and Sorority Life at the University of Maryland. He also has signed and authorized both the First and Second Suspension and No Contact Order. He is named in his individual and official capacity.

18. Defendant Patricia Perillo is the Vice President for Student Affairs at the University of Maryland, the individual to whom Defendants Bond and McShay report, and who, upon information and belief, exercises review and control over investigation and disciplinary decisions at the University. She is named in her individual and official capacity.

19. Defendant Darryll Pines is the President of the University of Maryland and, upon information and belief, is the person to whom Defendant Perillo reports, and who is ultimately in charge of ensuring that the policies of the University, including those pertaining to student conduct and discipline, are properly enforced. He is named in her individual and official capacity.

20. Defendants Bond, McShay, Perillo, and Pines are officials of the University of Maryland, and thus their conduct constitutes state action.

21. Defendant University of Maryland is a public university of the State of Maryland, and as such, its action and those of its officials undertaken on behalf of the University constitute state actions.

## GENERAL ALLEGATIONS

22. In Spring 2018, the University of Maryland adopted a Statement of Free Speech Values, a copy of which is attached hereto as **Exhibit A**) (the "Free Speech Policy").

23. The Free Speech Policy provides in part that "a university must protect and guarantee intellectual and academic freedom. To do so it must promote an environment in which any and all ideas are presented. Through open exchange, vigorous debate, and rational discernment, the campus community can evaluate ideas."

24. The Free Speech Policy further provides that "every member of the campus community has an obligation to support the right of free expression at the university, and to refrain from actions that reduce intellectual discussion. No member shall prevent such expression, which is protected under the constitutions of the United States and the State of Maryland."

25. Likewise, the University's Office of General Counsel publicly opined on its website that "public universities, like UMD, are subject to the constitutional restrictions set forth in the First Amendment and thus may not take action which infringes an individual's freedom of speech under the Constitution." The Office of the General Counsel further recognized that "the term "speech" constitutes expression that encompasses for more than just words."

26. Within the context of student organizations, Defendants, through the University's General Counsel's webpage, recognize that:

> Just like students themselves, student organizations at UMD have assembly and speech rights. UMD cannot deny to a group of students recognition as a student organization, so long as they meet established requirements to obtain such recognition…. **Likewise, student organizations can engage in expressive activities on campus consistent with UMD's time, place, and manner restrictions for doing so. To do otherwise would be tantamount to viewpoint discrimination and contrary to our obligations under the Constitution and law**.

(Emphasis added).

27. The University pledges in Section V(B) of its Code of Student Conduct that:

> The Office of Student Conduct provides a fair and balanced University process for resolving allegations of Student Prohibited Conduct. Students will be treated fairly and with dignity and respect without regard to [any] legally protected status…. The focus of the Student Conduct Review Process is to resolve allegations of Student Prohibited Conduct. **Students have the right to be notified of the allegations and specific policies they are alleged to have violated, to have access to the information underlying the allegation(s), and to have an opportunity to respond**.

(Emphasis added.)

28. Section IV of the University's Code of Student Conduct states that the Director of Student Conduct may issue No Contact Orders "whenever **there is evidence** that the continued interaction of the Student with other particular members of the University community poses a substantial threat to themselves or others, or to the stability and continuation of normal University operations including but not limited to individuals' educational or work environments." (Emphasis added.)

29. Notwithstanding these proclamations of respect for First Amendment protections of freedom of speech and association, on March 1, 2024, Defendants McShay and Bond sent the March 1, 2024, Suspension and No Contact Order to Plaintiffs (the "Original Order"). A true and accurate copy of the Original Order is attached hereto as **Exhibit B**.

30. Upon information and belief, the Original Order was only applicable to the social fraternities and sororities, including Plaintiffs, that are members of the Interfraternity Council and Panhellenic Association, but not also to any other student organizations.

31. The Original Order stated, in relevant part,

> Effective immediately, all [Interfraternity] and [Panhellenic] new member program activities are suspended indefinitely, pending the results of a thorough investigation. Additionally, all IFC and PHA organizations are on social

moratorium indefinitely. Social moratorium prohibits the chapter from having any events, on or off-campus, where alcohol is present.

32. The Original Order required that all Plaintiffs "are to have absolutely NO CONTACT with any new member or prospective new member." (Capitalization in original.)

33. To make abundantly clear how all-encompassing this order was, the Original Order commanded that "this directive means that every current member of the organization must not contact any new member or prospective new member via in-person, telephone, postal mail, any electronic means (including social media), or third-party communication."

34. To instill fear, the Original Order warned that "failure to abide by this directive will result in disciplinary action."

35. Taken in full, the Original Order was a complete gag order constituting an unlawful prior restraint on speech, and improperly restricted associational rights.

36. Moreover, the Original Order was issued in the total absence of **evidence** that the continued interaction between these students posed a substantial threat to themselves or others or to the stability and continuation of normal University operations, as the Code of Student Conduct requires.

37. On March 6, 2024, Defendants McShay and Bond sent the March 6, 2024, Suspension and No Contact Order to Plaintiffs (the "Amended Order"). A true and accurate copy of the Amended Order is attached hereto as **Exhibit C**.

38. Upon information and belief, the Amended Order was only applicable to the social fraternities and sororities, including Plaintiffs, that are members of the Interfraternity Council and Panhellenic Association, but not also to any other student organizations.

39. The Amended Order remains in effect as of the date of the filing of this Complaint, and will continue indefinitely.

40. Perhaps recognizing that the Original Order was blatantly unlawful, the University retreated somewhat in issuing the Amended Order. Specifically, the Amended Order allows affected students to discuss *some* topics, but other topics are still prohibited.

41. The Amended Order provides in part as follows:

    > This no contact order is limited to communications regarding Greek-letter organization-related activities. The following communications do not apply to this restriction:
    >
    > - Communications regarding UMD course-related work;
    > - Employment operations;
    > - Other UMD organizations and activities; and
    > - Functions not related to the Greek-letter organization.

42. While the Amended Order is something less than a complete gag order, it is a content-based restriction on speech and an improper prior restraint on speech.

43. Moreover, the Amended Order retains the restriction on all "new member activities and all social events involving alcohol."

44. According to the Amended Order, the stated purpose behind the restrictions is:

    > To implement a pause on new member activities while the University completes its investigation into widespread allegations of health and safety infractions in organizations' new member intake processes, and to help effectuate a prompt and effective investigation into such allegations. It is critical that the University preserve the credibility of student responses during the investigatory process.

45. As threatened in the Original Order, the Amended Order warns that "failure to abide by this directive will result in disciplinary action."

46. Defendants issued the Amended Order notwithstanding the various statements of the University and Office of the General Counsel professing respect for the protection of freedom of speech.

47. Defendants issued the Amended Order notwithstanding the failure by Defendants to provide any predeprivation due process to Plaintiffs, including adequate notice or an opportunity to respond, or postdeprivation remedies.

48. Moreover, the Amended Order was issued in the total absence of **evidence** that the continued interaction of these students with other particular members of the University community poses a substantial threat to themselves or others or to the stability and continuation of normal University operations, as required by the Code of Student Conduct.

49. Defendants Bond, McShay, Perillo, and Pines each knew about the University's misconduct and facilitated, approved, condoned, or otherwise turned a blind eye to it.

50. Plaintiffs intend to continue operating at the University, but they face real and immediate threats that Defendants will again proceed with investigating and/or imposing disciplinary measures devoid of procedural due process protections, or depriving Plaintiffs of their First Amendment rights, or both.

**FIRST CAUSE OF ACTION**
**Freedom of Speech Violations (42 U.S.C. § 1983)**
**[Against All Defendants in their Official Capacities]**

51. The allegations of the preceding paragraphs are incorporated herein by reference.

52. The University of Maryland and its officials are state actors subject to 42 U.S.C. § 1983. The individual officials also acted in their individual capacities.

53. By issuing the Original Order and the Amended Order, each of which contained threats of disciplinary enforcement, Defendants unlawfully infringed on the Plaintiffs' exercise of the rights of free speech to engage with particular members of the University community.

54. Under the Original Order, the Defendants' infringement of Plaintiffs' rights of free speech with respect to particular members of the University community was complete.

55. The Amended Order constitutes an unlawful content-based restriction on Plaintiffs' speech.

56. The Amended Order does not serve a compelling governmental interest.

57. The Amended Order is overbroad, as it restricts more speech than necessary to accomplish any purported compelling governmental interest.

58. Both the Original Order and the Amended Order unlawfully infringe on Plaintiffs' rights both facially and as applied to Plaintiffs.

59. The Original Order and the Amended Order unconstitutionally discriminate between categories of speech, based upon both the content of the message that the speakers seek to express and the identity of the speakers.

60. The Original Order and the Amended Order further operate as an unconstitutional restraint because they do not provide a specified brief period for its prohibitory scheme, disallows the status quo while investigation interviews are completed, and fails to provide a prompt, final disciplinary outcome.

**SECOND CAUSE OF ACTION**
**Freedom of Association Violations (42 U.S.C. § 1983)**
**[Against All Defendants in their Official Capacities]**

61. The allegations of the preceding paragraphs are incorporated herein by reference.

62. By issuing the Original Order and the Amended Order, each of which contained threats of disciplinary enforcement, Defendants unlawfully infringed on the Plaintiffs' exercise of their rights to freely associate with particular members of the University community.

63. Under the Original Order, the Defendants' infringement of Plaintiffs' rights to freely associate with respect to particular members of the University community was complete.

64. The Amended Order constitutes an unlawful content-based restriction on Plaintiffs' right to associate.

65. The Amended Order does not serve a compelling governmental interest.

66. The Amended Order is overbroad, as it restricts more associational rights than necessary to accomplish any purported compelling governmental interest.

67. Each of the Original Order and the Amended Order unlawfully infringe on Plaintiffs' rights both facially and as applied to Plaintiffs.

**THIRD CAUSE OF ACTION**
**Due Process Violations (42 U.S.C. § 1983)**
**[Against All Defendants in their Official Capacities]**

68. The allegations of the preceding paragraphs are incorporated herein by reference.

69. The University of Maryland's Code of Student Conduct states that the Director of Student Conduct may issue No Contact Orders "whenever **there is evidence** that the continued interaction of the Student with other particular members of the University community poses a substantial threat to themselves or others, or to the stability and continuation of normal University operations including but not limited to individuals' educational or work environments." (Emphasis added.)

70. Both the Original Order and the Amended Order contained a "NO CONTACT" provision. (Capitalization in original.)

71. The University admittedly had no "evidence" that the "continued interaction" of any of the affected students posed a "substantial threat to themselves or others, or to the stability and continuation of normal University operations including but not limited to individuals' educational or work environments."

72. The restrictions contained in the Original Order and the Amended Order contained restrictions on interpersonal contact, speech, and association that issued without due process as required by the University of Maryland Code of Conduct and the U.S. Constitution.

**FOURTH CAUSE OF ACTION**
**Challenge to the Regulation (Facial and As Applied)**
**(Art. 40 of the Md. Decl. of Rights & 28 U.S. C. § 2201)**
**[Against All Defendants in their Official Capacities]**

73. The allegations of the preceding paragraphs are incorporated herein by reference.

74. Article 40 of the Maryland Constitution's Declaration of Rights provides "that every citizen of the State ought to be allowed to speak, write, and publish his sentiments on all subjects."

75. "Article 40 is read generally in *pari materia* with the First Amendment." *Nefedro v. Montgomery County*, 996 A.2d 850, 855 n.5 (Md. 2010).

76. For the reasons articulated in the First and Second Causes of Action, the restrictions on speech and association contained in the Original Order and the Amended Order, both on their face and as applied, infringe Plaintiffs' rights to exercise free speech and freely associate under Article 40 of the Maryland Constitution's Declaration of Rights.

77. The restrictions contained in the Original Order and the Amended Order impermissibly chill Plaintiffs' protected speech and, without declaratory and injunctive relief, will continue to do so.

**FIFTH CAUSE OF ACTION**
**Declaratory Judgment**

78. The allegations of the preceding paragraphs are incorporated herein by reference.

79. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning Plaintiffs' rights under the U.S. Constitution. A judicial declaration is necessary and appropriate at this time as to Counts I through IV above.

80. Plaintiffs are seeking a judicial determination of their rights against Defendants as they pertain to Plaintiffs' rights to speak to all members of the University community without being subjected to unconstitutional policies that impose prior restraints on speech, and that are vague, overbroad, and not narrowly tailored to serve a compelling governmental interest.

81. To prevent further violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment issue, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring the Original Order and the Amended Order to be unconstitutional on their face and as applied to the Plaintiffs.

82. Pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, this Court should issue a permanent injunction prohibiting the Defendants from enforcing the restrictions on Plaintiffs' expressive activities in the Original Order and the Amended Order to the extent they are unconstitutional and to prevent the ongoing violation of constitutional rights. Citizens in the State of Maryland, including Student Plaintiffs—indeed, all the members of the Chapter Plaintiffs—are suffering irreparable harm from continued enforcement of unconstitutional policies, monetary damages are inadequate to remedy their harm, and the balance of equities and public interest both favor a grant of injunctive relief.

**Request for Relief**

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in combination and/or individually, as follows:

A. Temporary, preliminary, and permanent injunctive relief prohibiting Defendants from enforcing the prohibitions contained in the Original Order and the Amended Order;

B. A declaratory judgment declaring that Defendants' prohibitions on speech and expression contained in the Original Order and the Amended Order are unconstitutional, facially and as applied to Plaintiffs, and that Defendants violated Plaintiffs' rights as guaranteed under the First and Fourteenth Amendments to the U.S. Constitution;

C. Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988, and other applicable law; and

D. All other relief to which Plaintiffs may appear entitled.

Respectfully submitted,

/s/Micah E. Kamrass
Micah E. Kamrass (OH Bar No. 0092756)*
Ilana L. Linder (OH Bar. No. 0095622)*
Sean P. Callan (OH Bar. No. 0062266)*
*Pro Hac Vice forthcoming
MANLEY BURKE, LPA
225 W Court Street
Cincinnati, Ohio 45202
Phone: (513) 721-5525
Email: mkamrass@manleyburke.com
ilana.linder@manleyburke.com
sean.callan@manleyburke.com

/s/Alfred D. Carry
Alfred D. Carry (#20711)
Robert N. Driscoll (pro hac vice forthcoming)
McGLINCHEY STAFFORD PLLC
1275 Pennsylvania Ave. NW; Suite 420
Washington, DC 20004
Phone: (202) 802-9951
Fax: (202) 330-5897
Email: acarry@mcglinchey.com
rdriscoll@mcglinchey.com

*Attorneys for Plaintiffs*

**VERIFICATION**

The undersigned, being first duly cautioned and sworn state as follows:

We are the Presidents of the Chapter Plaintiffs, having been elected to such positions by our respective Chapters. We are familiar with the various directives adopted or approved by the University of Maryland referenced in the Complaint.

We have reviewed the foregoing Complaint and verify under the penalty of perjury that its factual allegations are true to the best of our knowledge and belief, particularly with respect to facts relevant to each of our respective Chapters.

**Jackson Hochhauser, President**
Alpha Psi Chapter of Theta Chi Fraternity

03/13/24
Date

**Garrett Bruce, President**
Beta Kappa Chapter of Kappa Alpha Order

Date

**Christopher Chang, President**
Epsilon Delta Chapter of Alpha Sigma Phi Fraternity

Date

**Joseph Campbell, President**
Epsilon Gamma Chapter of Alpha Tau Omega Fraternity

Date

**VERIFICATION**

The undersigned, being first duly cautioned and sworn state as follows:

We are the Presidents of the Chapter Plaintiffs, having been elected to such positions by our respective Chapters. We are familiar with the various directives adopted or approved by the University of Maryland referenced in the Complaint.

We have reviewed the foregoing Complaint and verify under the penalty of perjury that its factual allegations are true to the best of our knowledge and belief, particularly with respect to facts relevant to each of our respective Chapters.

______________________________
**Jackson Hochhauser, President**
Alpha Psi Chapter of Theta Chi Fraternity

____________
Date

Garrett J Bruce
______________________________
**Garrett Bruce, President**
Beta Kappa Chapter of Kappa Alpha Order

3/13/24
Date

______________________________
**Christopher Chang, President**
Epsilon Delta Chapter of Alpha Sigma Phi Fraternity

____________
Date

______________________________
**Joseph Campbell, President**
Epsilon Gamma Chapter of Alpha Tau Omega Fraternity

____________
Date

**VERIFICATION**

The undersigned, being first duly cautioned and sworn state as follows:

We are the Presidents of the Chapter Plaintiffs, having been elected to such positions by our respective Chapters. We are familiar with the various directives adopted or approved by the University of Maryland referenced in the Complaint.

We have reviewed the foregoing Complaint and verify under the penalty of perjury that its factual allegations are true to the best of our knowledge and belief, particularly with respect to facts relevant to each of our respective Chapters.

______________________________
**Jackson Hochhauser, President**
Alpha Psi Chapter of Theta Chi Fraternity

____________
Date

______________________________
**Garrett Bruce, President**
Beta Kappa Chapter of Kappa Alpha Order

____________
Date

Christopher Chang
______________________________
**Christopher Chang, President**
Epsilon Delta Chapter of Alpha Sigma Phi Fraternity

03/13/2024
____________
Date

______________________________
**Joseph Campbell, President**
Epsilon Gamma Chapter of Alpha Tau Omega Fraternity

____________
Date

**VERIFICATION**

The undersigned, being first duly cautioned and sworn state as follows:

We are the Presidents of the Chapter Plaintiffs, having been elected to such positions by our respective Chapters. We are familiar with the various directives adopted or approved by the University of Maryland referenced in the Complaint.

We have reviewed the foregoing Complaint and verify under the penalty of perjury that its factual allegations are true to the best of our knowledge and belief, particularly with respect to facts relevant to each of our respective Chapters.

______________________________
**Jackson Hochhauser, President**
Alpha Psi Chapter of Theta Chi Fraternity

____________
Date

______________________________
**Garrett Bruce, President**
Beta Kappa Chapter of Kappa Alpha Order

____________
Date

______________________________
**Christopher Chang, President**
Epsilon Delta Chapter of Alpha Sigma Phi Fraternity

____________
Date

Joseph T Campbell
______________________________
**Joseph Campbell, President**
Epsilon Gamma Chapter of Alpha Tau Omega Fraternity

3/13/24
____________
Date