# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALPHA PSI CHAPTER OF THETA CHI FRATERNITY, *ET AL.* | * | |
| *Plaintiffs*, | * | |
| v. | * | No. 8:24-cv-00753-DLB |
| | * | |
| JAMES BOND, *ET AL.*, | | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT OF JAMES BOND

I, James Bond, being over 18 years of age and competent to testify to the matters set forth herein, state as follows:

1. I am the Director of the Office of Student Conduct at the University of Maryland (the "University"). I have served in this role for two and a half years. I have worked at the University in various roles for a total of 19 years. As the Director of the Office of Student Conduct ("OSC"), I am responsible for resolving allegations of individual and organizational misconduct in a manner consistent with our Code of Student Conduct and Code of Academic Integrity, thereby ensuring due process for the University of Maryland student community. I supervise a staff of ten employees who practice the values of fairness, honesty, integrity, respect, and compassion in our work.

2. The University recognizes eligible fraternities and sororities, also known as chapters, as student organizations. The University's chapters are governed by four councils: the Interfraternity Council ("IFC"), the Multicultural Greek Council ("MGC"), the National Pan-Hellenic Council ("NPHC"), and the Panhellenic Association ("PHA"). The vast majority of

University students who are members of Greek organizations are members of chapters governed by the IFC and the PHA. These chapters generally engage in recruitment activities for a period of six to eight weeks beginning in or around February of each year.

3. University students and student organizations, including chapters, are subject to the University's Code of Student Conduct (the "Code of Conduct"). A true and correct copy of the Code of Conduct is attached to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction as Exhibit 2.

4. A true and correct copy of the University's Hazing Policy is attached to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction as Exhibit 3.

5. On or around February 22, 2024, OSC received two referrals alleging Code of Conduct violations by Fraternity 1, a member of the IFC. Specifically, a resident director reported that, during residence inspections on February 20, 2024, he found multiple prohibited substances and drug paraphernalia in the fraternity house of Fraternity 1. OSC also received an anonymous report from a parent that their son was being subjected to harmful hazing by Fraternity 1. A true and correct copy of this anonymous referral is attached to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction as Exhibit 4.

6. Following OSC's receipt of these referrals, on February 27 and 28, 2024, OSC interviewed members of Fraternity 1, who provided inconsistent and apparently false statements to OSC investigators.

7. On the evening of February 27, 2024, OSC received an anonymous email referral alleging that multiple unidentified fraternities were engaged in hazing activities with new

members. A true and correct copy of this anonymous email referral is attached to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction as Exhibit 5.

8. The University refers to an incident where a student is transported off campus by an emergency responder to a healthcare facility due to excessive alcohol consumption as an "alcohol transport."

9. Several hours after meeting with the chapter presidents about appropriate conduct on February 29, 2024, in the early morning hours of March 1, there were two separate incidents of alcohol transports involving excessive alcohol consumption by new members of PHA chapters who had reportedly attended chapter events on the evening of February 29, 2024. OSC received referrals relating to these incidents on Friday March 1, 2024.

10. In the morning of March 1, 2024, OSC received an anonymous referral from the mother of a new member of Fraternity 2 alleging hazing by the chapter. A true and correct copy of this anonymous email referral is attached to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction as Exhibit 7.

11. On March 1, 2024, OSC reviewed data from the University's Health and Counseling Centers and found there was a troubling uptick in visits to both Centers by IFC and PHA chapter members during the month of February. A true and correct copy of this data is attached to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction as Exhibit 8.

12. Based on the totality of information received by the University as of March 1, 2024, and concerns about ongoing violations of the Code of Conduct relating to hazing and alcohol and drug use, OSC determined that immediate action was warranted to prevent harm to

the University's students, particularly since it was anticipated that there would be many recruiting activities and social events by the chapters in the coming weekend.  Consequently, OSC determined that it would place a temporary interim cease and desist order relating to two specific activities by chapters:  (1) hosting social events where alcohol is served; and (2) conducting new or prospective member activities.  Because the February 27 referral alleged widespread hazing across multiple unnamed chapters and because of the nature and extent of the other evidence described above, the cease and desist order was imposed on all IFC and PHA chapters so that the University could have an opportunity to thoroughly but expeditiously investigate the allegations and identify specific chapters, if any, that were allegedly involved in hazing.  The intent of the no contact restriction was to protect vulnerable underclassmen who are new or prospective members of chapters from being subjected to hazing as well as to maintain integrity in the investigation of the serious allegations set forth in the February 27 referral.

13. Following the decision to implement interim measures on March 1, 2024, the University promptly engaged InCompliance, an outside consulting firm, to interview students for the purpose of gathering information about the activities of chapters during the preceding weeks. A true and correct copy of the notice sent to the chapter members on March 8, 2024, regarding the investigation is attached to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction as Exhibit 9.

14. Beginning on March 11, 2024, investigators interviewed over 150 chapter members regarding their experiences with Greek life on campus.  As of the afternoon of March 15, 2024, InCompliance's preliminary factfinding investigation has concluded, and the University has lifted the interim measures set forth in the March 1 and 6, 2024, notices.  A true and correct copy of the campuswide notice lifting the interim measures on March 15, 2024, is

attached to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction as Exhibit 10.

      15.    A true and correct copy of the March 15, 2024, notice of investigation sent to Plaintiff Kappa Alpha Order is attached to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction as Exhibit 11.

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on March 15, 2024.

                                                                       */s/ James Bond*
                                                                       James Bond